Case 3:24-cv-00685-MAS-JTQ   Document 22   Filed 10/28/24   Page 1 of 6 PageID: 246


**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CENTURY INDEMNITY CO., AS SUCCESSOR TO CCI INSURANCE CO., AS SUCCESSOR TO INSURANCE CO. OF NORTH AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE DIOCESE OF TRENTON, *et al.*,<br><br>Defendants. | Civil Action No. 24-685 (MAS) (JTQ)<br><br>**MEMORANDUM ORDER** |

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants', the Diocese of Trenton and dozens of its parishes (collectively the "Diocese"), Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively[1]. (ECF No. 14.) Plaintiff Century Indemnity Co. ("Century") opposed (ECF No. 17), and the Diocese replied (ECF No. 20). After considering the parties' submissions, the Court decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court finds that it lacks subject-matter jurisdiction to adjudicate Century's claims.

---

[1] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

This action traces back to the 2019 passage of the New Jersey Child Victims Act (the "CVA"), which opened the door for "survivors of child sexual abuse to file otherwise time-barred claims." (Compl. ¶ 1, ECF No. 1; Defs.' Moving Br. 5, ECF No. 14.) Thereafter, hundreds of survivors filed lawsuits against the Diocese, seeking redress for the abuse they allegedly endured years prior (the "CVA Lawsuits"). (Compl. ¶ 1.) Of relevance to the instant dispute, between 1957 and 1972 (the "Policy Period"), Century issued seven general liability insurance policies to the Diocese (collectively, the "Insurance Policies"). (*Id.* ¶ 55.) The Insurance Policies covered, until 1972, liabilities arising from "accidents" or "occurrences" which transpired during the Diocese's operations, but "d[id] *not* cover liabilities that the [Diocese] expected or intended." (*Id.* ¶ 56 (alteration in original).) Today, Century is defending the Diocese against CVA Lawsuits centered on acts that occurred during the Policy Period. (*Id.* ¶¶ 3, 60, 83 (recognizing that Century has agreed to defend the Diocese in "87 CVA-related lawsuits, involving 212 claimants, subject to a full reservation of rights.").) Nowhere in the Complaint does Century allege that the Diocese has been found liable in a CVA Lawsuit arising from actions that occurred during the Policy Period. (*See generally id.*)

Century's declaratory judgment action is not ripe for a federal court's review. "Article III of the Constitution limits the federal judiciary's authority to exercise its 'judicial Power' to 'Cases' and 'Controversies'" over which the federal judiciary is empowered to decide. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017) (quoting U.S. CONST. art. III, § 2). "This case-or-controversy limitation, in turn, is crucial in 'ensuring that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society.'" *Id.* at 539 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). The existence of a case or controversy, therefore, is a necessary "prerequisite to all federal actions[.]" *Phila. Fed'n of*

2

*Tchrs. v. Ridge* , 150 F.3d 319, 322 (3d Cir. 1998) (quoting *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)).

Federal courts ensure that they are properly enforcing the case-or-controversy limitation through "several justiciability doctrines that cluster about Article III, including standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Plains*, 866 F.3d at 539 (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (internal quotation marks omitted)). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018) (citation omitted). This principle derives from the notion that courts should not be deciding issues that rest "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Gov't Emps. Ret. Sys. of the Gov't of U.S. V.I. v. Turnbull*, 134 F. App'x 498, 500 (3d Cir. 2005) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).[2]

Crucially, Article III's "case or controversy requirement," which requires in part that "a legal controversy . . . is real and not hypothetical," and "must be met regardless of the type of relief sought, including declaratory judgment." *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 410 (3d Cir. 1992) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). When considering a plaintiff's claims, declaratory or otherwise, federal courts are to "presume" they "lack jurisdiction 'unless "the contrary appears affirmatively from the record."'" *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area*

---

[2] Where a federal court finds that a claim is not ripe, the court lacks subject matter jurisdiction to adjudicate the unripe claim. *Renne v. Geary*, 501 U.S. 312, 316 (1991) ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so.")

3

*Sch. Dist.*, 475 U.S. 534, 546 (1991)). Ultimately, "[i]t is the responsibility of the complainant [to clearly] allege facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Id.* (quoting *Bender*, 475 U.S. at 546).

Here, the Court's ripeness concerns are manifest on the face of the Complaint. (*See generally* Compl.) While bringing a single claim for certain declarations, Century's primary grievance with the Diocese is a lack of forthcomingness with information pertaining to coverage. (*Id.* ¶ 61 ("Although [the Diocese] ha[s] provided some information to Century about certain [CVA Lawsuits], that information is incomplete and insufficient."); *id.* ¶ 93 ("Century needs discovery about the Underlying Claims to evaluate the Diocese's requests for coverage and to make a final determination as to whether the Diocese is entitled to coverage under the Insurance Policies for any particular underlying Claim."); *id.* ¶ 94 ("Century currently lacks information needed to evaluate the claims for which the Diocese seeks coverage under the Insurance Policies."); *id.* ¶ 97 ("To date, the Diocese has not provided the requested information to Century, and Century has no access to the Diocese's internal files. To the extent that documents have been produced to the underlying plaintiffs pursuant to [an order in a New Jersey state court action], those documents have not been made available to Century."); *id.* ¶ 99 ("Century thus brings this declaratory judgment action to obtain discovery from the Diocese concerning facts bearing on coverage for the Underlying Claims and to seek an adjudication of any legal issues raised by the facts as to any particular claim.").) To this end, in seeking declarations from this Court, Century is clear that its ultimate intent in bringing this action is to obtain discovery to better assess its coverage determinations. (*Id.*) This is where Century's declaratory judgment action drifts afield from a federal court's grasp.

This Court's ripeness concern is manifest in Century's own language. Century avers that "[t]o the extent that specific information obtained in discovery does not support coverage as to a particular claim, Century will ultimately seek coverage declarations based on that information, as to that claim." (*Id.* ¶ 61.) This allegation is self-aware that it is unripe. Essentially, Century asks this Court for declaratory judgments, but expressly acknowledges, "only if" discovery reveals it necessary. By its own language, this has yet to occur, and in functional effect then, Century brings this declaratory judgment action "just in case," or to find an ulterior method to obtain discovery where it has thus far been unsuccessful in other courts. *Texas*, 523 U.S. at 300 ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'")

Crucially, while declaratory judgments are by their nature premature, when permissible, they are not by their nature built on hypotheticals, contingencies, and speculation like that which Century asks this Court to engage in. *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Loc. Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (finding that "declaratory judgments are typically sought before a completed injury has occurred" but confirming that where a plaintiff's requested declaration is built on a "contingency" such as an actual attempt to indemnify by the Diocese, such requests are not ripe for a federal court's review). To provide Century some direction, the declaratory judgment it seeks will ripen if and when the Diocese seeks indemnification from it after being found liable in a CVA Lawsuit. *Hartford Ins. Co. of the Midwest v. Dana Transp. Inc.*, No. 16-9091, 2018 WL 10152321, at *5 (D.N.J. May 21, 2018) ( "As a general matter, courts refrain from adjudicating whether an insurer has a duty to indemnify an insured until after the insured is found liable for damages in an underlying action[,]" because in that context "the issue of indemnification is not yet a

5

controversy between the parties" within the meaning of Article III.). This is something that Century expressly alleges has not occurred. (Compl. ¶ 106 ("As to Underlying Claims, *if* any, for which Century is obligated to indemnify the Diocese . . . .").)

For the reasons outlined above, Century's Complaint relies on a strictly hypothetical controversy that may never occur. Because the Court cannot simply open a gateway to discovery without any ripe claim underneath allowing the Court to exercise jurisdiction over this matter,

IT IS on this 28th day of October 2024, **ORDERED** as follows:

1. Century's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

2. Century may refile its Complaint in this Court should its declaratory judgment claim ripen for a federal court's review.

3. The Clerk's Office shall close this case.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**